## CA Nos. 19-10163 and 19-10250

District Court No. 2:16-cr-216-KJD-VCF

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LONNY JOSEPH DITIRRO, JR.,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**GOVERNMENT'S ANSWERING BRIEF**

NICHOLAS A. TRUTANICH
United States Attorney

ELIZABETH O. WHITE
Appellate Chief

ELHAM ROOHANI
Assistant U.S. Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Attorneys for the United States

Date submitted: September 21, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................v

I.     STATEMENT OF JURISDICTION AND BAIL STATUS.................1

II.    ISSUES PRESENTED FOR REVIEW ...............................................2

Whether the district court properly admitted evidence on the SD Card containing evidence of child sexual exploitation offenses because probable cause provided by statements of a private actor about seeing images of adult men raping children as young as toddlers supported the search warrant, and because exceptions to the fruit of the poisonous tree doctrine preclude exclusion?

Whether Ditirro waived his Fifth and Sixth Amendment arguments by failing to raise them in the district court despite being on notice of the arguments and after preventing the government from developing a factual record on the issue during the evidentiary hearing? And, in any event, whether the district court properly admitted Ditirro's post-*Miranda* statement?

Whether introduction of Ditirro's statement at trial was harmless?

III.   STATEMENT OF THE FACTS .......................................................2

       A.    *Overview* ......................................................................2

       B.    *Discovery of the SD Card* ...............................................3

       C.    *Search Warrant Application Process* ...............................4

       D.    *Forensic Examination of the SD Card* ............................6

       E.    *Ditirro's Arrest and Post-*Miranda *Interview*....................6

       F.    *Ditirro's Suppression Motions*.........................................8

G.      *Evidentiary Hearing on Ditirro's Motions*............................9

H.      *Report and Recommendation*.......................................10

I.      *Ditirro's Objections to the Report and Recommendation*...............11

J.      *Trial*.......................................................12

IV.     SUMMARY OF ARGUMENT......................................15

V.      ARGUMENT.................................................17

A.      The District Court Properly Admitted into Evidence the Contents
        of the SD Card. ..........................................17

1.      Standard of Review .....................................17

2.      Even After Excising Statements About What Officers
        Bianco and Wilson Saw, Probable Cause Supported the
        Search Warrant. .........................................18

a.      Even considering the Fourth Amendment violation,
        exceptions to the fruit of the poisonous tree doctrine
        preclude exclusion..................................23

1.      *Independent Source* .........................24

2.      *Inevitable Discovery*.........................24

3.      *Attenuated Basis*...........................26

4.      *Good Faith* ...............................27

B.      Ditirro Waived His Fifth and Sixth Amendment Claims By
        Failing to Raise Them in the District Court, and He Demonstrates
        No Good Cause For Raising Them For the First Time on Appeal.
        Even If He Did Not Waive These Claims, They Fail on the Merits
        As Well....................................................29

1.   Standard of Review ..........................................................29

2.   After the Magistrate Judge Explicitly Noted That Ditirro
     Had Raised No Fifth or Sixth Amendment Challenge,
     Ditirro Still Did Not Raise Such a Claim in the District
     Court..............................................................................30

3.   Ditirro Cannot Demonstrate Error, and Certainly Makes No
     Showing of Plain Error Affecting Substantial Rights.........31

C.   In Any Event, Introduction of Portions of Ditirro's Statement at
     Trial Was Harmless...................................................................34

1.   Standard of Review ..........................................................34

2.   Admission of Ditirro's Statements at Trial Was
     Harmless..........................................................................35

VI.   CONCLUSION .................................................................................36

VII.   STATEMENT OF RELATED CASES............................................37

CERTIFICATE OF COMPLIANCE

iv

# TABLE OF AUTHORITIES

## Federal Cases

*Bastidas v. Chappell*, 791 F.3d 1155 (9th Cir. 2015).................................. 18, 21

*Berghuis v. Thompkins*, 560 U.S. 370 (2010) ....................................................33

*Bill v. Brewer*, 799 F.3d 1295 (9th Cir. 2015)............................................. 18,19

*Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452 (9th Cir. 1983).................18

*Brown v. Illinois*, 422 U.S. 590 (1975)............................................................26

*Carroll v. United States*, 267 U.S. 132 (1925)..................................................18

*Dalia v. United States*, 441 U.S. 238 (1979)....................................................19

*Davis v. Ayala*, 576 U.S. 257 (2015) ........................................................ 35, 36

*Edwards v. Arizona*, 451 U.S. 477 (1981).........................................................33

*Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010)..............................................34

*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................19

*Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991)...............................................18

*Missouri v. Seibert*, 542 U.S. 600 (2004) ..........................................................9

*Montejo v. Louisiana*, 556 U.S. 778 (2009)......................................................32

*Nix v. Williams*, 467 U.S. 431 (1984)......................................................... 24, 25

*Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357 (1998)...........................27

*Rent v. United States*, 209 F.2d 893 (5th Cir. 1954) .........................................18

*Rocha v. United States*, 387 F.2d 1019 (9th Cir. 1967).....................................18

*Rodriguez v. McDonald*, 872 F.3d 908 (9th Cir. 2017)......................................34

*Sessoms v. Grounds*, 776 F.3d 615 (9th Cir. 2015) ..........................................35

*Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920) .........................24

*United States v. Ardle*, 435 F.2d 861 (9th Cir. 1970)........................................18

*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008) ...............................3

*United States v. Evans*, 786 F.3d 779 (9th Cir. 2015)......................................29

*United States v. Garcia-Morales*, 942 F.3d 474 (9th Cir. 2019).........................33

*United States v. Gorman*, 859 F.3d 706 (9th Cir. 2017)..............................23, 26

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) ..................................19

*United States v. Guerrero*, 921 F.3d 895 (9th Cir. 2019)............................29, 31

*United States v. Leon*, 469 U.S. 897 (1984)........................................23, 27, 28

*United States v. Olano*, 507 U.S. 725 (1993)..................................................29

*United States v. Perez*, 116 F.3d 840 (9th Cir. 1997).................................29, 30

*United States v. Ramirez–Sandoval*, 872 F.2d 1392 (9th Cir. 1989) ........23, 24, 25

*United States v. Sanford*, 673 F.2d 1070 (9th Cir. 1982)............................17, 18

*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) ..................................27

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998)....................................26

*United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015).................31, 32

*United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013).......................19, 25

*United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987)...........................19, 20, 23

*United States v. Yang*, 958 F.3d 851 (9th Cir. 2020).........................................17

*Utah v. Strieff*, 136 S. Ct. 2056 (2016).......................................... 26, 27, 28, 29

*Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967).............................19

*Wong Sun v. United States*, 371 U.S. 471 (1963)..............................................23

## Federal Statutes

18 U.S.C. § 2251 ...................................................................................2

18 U.S.C. § 2252 ...................................................................................2

18 U.S.C. § 3231 ...................................................................................1

18 U.S.C. § 3509 ...................................................................................6

28 U.S.C. § 1291 ...................................................................................1

## Federal Rules

Fed. R. App. P. 4...................................................................................1

Fed. R. App. P. 32................................................................................38

## Other Authorities

U.S. Const. Amend. IV ........................................................................18

# I.

## STATEMENT OF JURISDICTION AND BAIL STATUS

Defendant-Appellant Lonny Joseph Ditirro, Jr. appeals from a final judgment in a criminal case.[1] The district court had jurisdiction under 18 U.S.C. § 3231; imposed sentence on May 1, 2019; entered judgment on May 9, 2019 (CA No. 19-10163); and entered an amended judgment for restitution purposes on July 19, 2019 (CA No. 19-10250). ER 201. Ditirro filed a timely notice of appeal from the initial judgment on May 9, 2019 (CA No. 19-10163); and filed a timely notice of appeal from the amended judgment on July 24, 2019. ER 213 (CA No. 19-10250); *see* Fed. R. App. P. 4(b)(1). The Court consolidated the two appeals by order on July 29, 2019. *See* CA No. 19-10163 at Dkt. Entry #10. This Court has jurisdiction under 28 U.S.C. § 1291.

Ditirro (BOP Register No. 53326-048) is in the custody of the Bureau of Prisons at Tucson USP. His expected release date is October 5, 2135. *See* www.bop.gov.

---

[1]     "ER" denotes Ditirro's Excerpts of Record preceeded by the volume number. "SER" denotes the Government's Supplemental Excerpts of Record. "OB" denotes Ditirro's Opening Brief. "PSR" denotes the Presentence Investigation Report, which the government files under seal.

1

## II.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the district court properly admitted evidence on the SD Card containing evidence of child sexual exploitation offenses because probable cause provided by statements of a private actor about seeing images of adult men raping children as young as toddlers supported the search warrant, and because exceptions to the fruit of the poisonous tree doctrine preclude exclusion?

2.  Whether Ditirro waived his Fifth and Sixth Amendment arguments by failing to raise them in the district court despite being on notice of the arguments and after preventing the government from developing a factual record on the issue during the evidentiary hearing? And, in any event, whether the district court properly admitted Ditirro's post-*Miranda* statement?

3.  Whether introduction of Ditirro's statement at trial was harmless?

## III.

## STATEMENT OF THE FACTS

*A. Overview*

A federal grand jury indicted Ditirro on four counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). SER 93-97. The case hinged on evidence discovered on a micro SD card belonging to Ditirro, on which Ditirro meticulously organized child sexual abuse images he produced and collected. The four counts of sexual exploitation related to four identified girls who

Ditirro sexually assaulted while recording videos of the assaults. The remaining child pornography possession count related to the remaining 44 not-yet-identified victims (images Ditirro produced), and images of known child pornography series victims Ditirro downloaded and collected. The case arose after Ditirro's ex-girlfriend, through her neighbor, gave the SD card to law enforcement, and law enforcement executed a search warrant on the SD card.[2]

### B. Discovery of the SD Card

Rachel Ismail, née Saito, Ditirro's ex-girlfriend, found an SD card stuck to her leg while lying in bed. 1ER 9, 11, 14. Ismail believed the SD card belonged to Ditirro. 1ER 14. She put the SD card into her phone and saw child pornography, which she described as "kiddi porn children in full penetration and oral with grown men. Children were 5-10 various ages." 1ER 14, 23; SER 156. Ismail gave the SD card to her friend, Stephen Baltazar Torrez. 1ER 24; SER 153.

Later, when Ismail had left briefly, Torrez called the Las Vegas Metropolitan Police Department, and Officers Nicholas Bianco and Garret

---

[2] The magistrate judge held a hearing on Ditirro's motion to suppress the SD card and the statements Ditirro gave to law enforcement after his arrest. This recitation is from the credible evidence presented during the evidentiary hearing and found by the district court. *Id.*; *see United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) ("Where testimony is taken, we give special deference to the district court's credibility determinations.").

Wilson responded to Torrez's residence in reference to the child exploitation call for service. 1ER 25, 77-78; SER 153. Torrez said his friend, Ismail, found a SanDisk Micro SD card in her bed that belonged to Ditirro. 1ER 78. Ismail later arrived at Torrez's home and confirmed to Officers Bianco and Wilson that she had seen the contents of the SD card and found what she believed to be child pornographic images on it. 1ER 81, 99-100; SER 153-54. Officers Bianco and Wilson viewed a few images on the SD card using Torrez's cell phone. 1ER 79. Following normal procedure, Officers Bianco and Wilson impounded the SD card into evidence and notified the Sexual Assault Team of their preliminary investigation. 1ER 81-82, 100; SER 160-61.

### C. Search Warrant Application Process

Detective Shannon Tooley was assigned the case and conducted a follow-up investigation. 1ER 48. Detective Tooley conducted her own interview with Ismail. 1ER 50. Ismail said she and Ditirro dated and were in a casual relationship. 1ER 51. Ismail told Detective Tooley that she had discovered the SD card belonging to Ditirro in her bed. 1ER 51. Ismail explained that she viewed the contents of the SD card and found images of Ditirro, images of child pornography, and photos of Ditirro engaged in sexual acts with a girl who appeared to be around 15 years old. 1ER 51. Ismail

4

described the images she saw of children around 12 years old "engaged in actual sexual penetration with adult males." 1ER 51.

Relying mainly upon the facts provided by Ismail, Detective Tooley obtained a search warrant from the State of Nevada to seize and perform a full forensic examination on the SD card, for evidence of child pornography and proof of ownership of the card. 1ER 215-225.

In her two-page, single-spaced probable cause statement in the Search Warrant Application, Detective Tooley related all of the information provided by Torrez and Ismail to Officers Bianco and Wilson. 1ER 217-28. She also included information from her own interview of Ismail. *Id.* In relevant part, Detective Tooley explained that Ismail had seen

- Images of a child approximately five-years-old "engaged in sexual acts with an adult male";

- Images of Ditirro having sex with a 15-year-old girl named "S.M."; and

- An image of a girl "around the age of 12 engaged in sexual intercourse with an adult male."

1ER 217-28. Within the summary, to give a full and truthful account of the investigation, Detective Tooley included two sentences noting that Officers Bianco and Wilson viewed contents of the SD card using Torrez's cell phone. 1ER 218 ("Officers, using Baltazar's cell phone viewed the SD card. Officers

5

observed several images of females, who appeared to be under the age of 16, engaged in sexual acts.")

### D. Forensic Examination of the SD Card

LVMPD Forensic Analyst Matt Trafford completed a forensic examination on the SD card. 3ER 406-07. His examination revealed hundreds of images and videos of child pornography on the SD card, including images of child pornography involving infants/toddlers. 3ER 579. In addition to these images of child pornography, Ditirro had organized and catalogued dozens of folders titled with the names and ages of nearly 50 girls. 3ER 420-21. These folders included photos of the girls, videos of Ditirro raping the girls, and letters and text messages about how some of the girls were in love with Ditirro. 3ER 418-419 (Government's Trial Exhibit 5).[3]

### E. Ditirro's Arrest and Post-Miranda Interview

Before law enforcement identified any live victims, 1ER 109-111, the State of Nevada charged Ditirro with child pornography offenses. 1ER 113. He was not interviewed. Thereafter, LVMPD Detective Scott Miller and FBI Special Agent Sue Flaherty arrested Ditirro at his home on a federal arrest

---

[3]     This exhibit contains child sexual exploitation images and remains in FBI impound pursuant to the district court's order and 18 U.S.C. § 3509(m). At this Court's request, the government stands ready to securely transmit the contraband exhibit to the Court for its consideration.

warrant, but asked only biographical questions at that time. 1ER 115-116.

Detective Miller and Special Agent Flaherty took Ditirro to FBI headquarters

and Mirandized him. 1ER 117. As confirmed by the recording of the post-

*Miranda* interview, Detective Miller and Special Agent Flaherty did not ask

any questions other than biographical information before Mirandizing Ditirro.[4]

2ER 226-274.

Detective Miller and Special Agent Flaherty informed Ditirro of his

*Miranda* rights. 2ER 227. Ditirro waived his *Miranda* rights and voluntarily

spoke with law enforcement. 2ER 227. Ditirro did not give a confession. 2ER

226-274. However, Ditirro stated that he did not have a computer, but rather

that he used his cell phone and SD cards to save information and data. 2ER

226-274. Ditirro admitted that he only had two cell phones in the past, both

Android smartphones—a Samsung S6 and an earlier model S4. 2ER 226-274.

When Detective Miller and Special Agent Flaherty asked about child

pornography, Ditirro, for the first time, asked about whether he should have

his lawyer present. 2ER 265. Although he did not unambiguously invoke his

right to counsel, Detective Miller and Special Agent Flaherty tried to

---

[4]     Ditirro has submitted the transcript of the recording and does not refute
its contents. At the Court's request, the government stands ready to transmit
the recording for the Court's consideration if the transcript does not suffice.

7

determine if he was invoking his right to counsel, and eventually terminated the interview. 2ER 265-274. After Ditirro's first mention of an attorney, Detective Miller and Special Agent Flaherty did not ask any substantive or incriminatory questions. 2ER 226–274 (transcript of voluntary statement); 2ER 265 (first mention of lawyer); 2ER 265–274 (no further incriminating questions asked).

### F. Ditirro's Suppression Motions

Ditirro moved to suppress evidence derived from the forensic examination of the SD card and his voluntary post-*Miranda* statements. With respect to the SD card, Ditirro asserted that officers searched the SD card without a warrant, and otherwise unreasonably delayed pursuing the search warrant.[5] SER 132. Ditirro also maintained that Torrez was a government actor[6] and that Officers Bianco and Wilson exceeded the scope of Ismail's private search. SER 133. Finally, Ditirro posited that the search warrant did not establish probable cause because Officers Bianco and Wilson's search tainted it. SER 139.

---

[5] On appeal, Ditirro has abandoned his claims regarding the timeliness of obtaining the search warrant. *See* OB 10-14.

[6] On appeal, Ditirro has abandoned his arguments regarding Torrez being a government actor. *See* OB 12-13.

In the district court, Ditirro's challenges to the admission of his statements went to the voluntariness of the statements and the alleged use of two-step interrogation in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). SER 133, 142. Ditirro claimed that his statements were involuntary in so much as they were obtained through coercive police tactics. SER 142. He also asserted that Detective Miller and Special Agent Flaherty improperly used a two-step interrogation tactic.[7]

### G. *Evidentiary Hearing on Ditirro's Motions*

The magistrate judge held an evidentiary hearing on Ditirro's motions. 1ER 1-3. At the outset of the hearing, the court sought to confirm the issues as raised in the briefing as being (1) standing, (2) private search, (3) probable cause, (4) delay in the state search warrant, (5) voluntariness of the recorded statements, and (6) two-step interrogation. 1ER 4. Defense counsel confirmed the judge's understanding and submitted the issues "based on that briefing." 1ER 4.

During the evidentiary hearing, the government attempted to explain the distinction between the charges and evidence in the federal case as compared to the state case by briefly going into the facts and investigation. 1ER 110-111.

---

[7]     Ditirro raises neither of these arguments on appeal. OB 15.

9

But defense counsel objected to the line of questions as irrelevant, and the court asked the government to move on, precluding the government from making a record about the differences between the state and federal cases. 1ER 111.

### H. Report and Recommendation

In his Report and Recommendation, the magistrate judge recommended the motion to suppress be largely denied, and granted only in part. The court found, in relevant part:

- Ditirro had standing to challenge the search. 1ER 183-84.

- The government had not shown Officers Bianco and Wilson's search was coextensive with the private actors' (Ismail and Torrez) search. 1ER 186-88.

- The statements Torrez and Ismail made to Officers Bianco and Wilson established probable cause, and Ismail's statements to Detective Tooley further supported probable cause. And, in any event, detectives relied on the search warrant in good faith. 1ER 189-190.

- Ditirro "did not raise the issue of a violation of his Fifth or Sixth Amendment right to counsel in his motion." 1ER 195.

- Ditirro made his post-*Miranda* statement voluntarily. 1ER 195.

- Law enforcement did not subject Ditirro to a two-step interrogation. 1ER 197.

Accordingly, the magistrate judge recommended suppression of only the statements or testimony about what Officers Bianco and Wilson viewed while searching the images contained in the SD card. 1ER 188. But he recommended that the evidence seized as a result of the subsequent forensic examination of the SD card and Ditirro's post-*Miranda* statements be deemed admissible. 1ER 190, 198.

## I. *Ditirro's Objections to the Report and Recommendation*

In his objections to the Report and Recommendation, Ditirro argued that "the vague and inconsistent statements from" Ismail and Torrez did not establish probable cause. SER 110. Ditirro continued to challenge the voluntariness of the statement and the alleged use of a two-step interrogation. SER 117-121. Ditirro's objections also added a new *Franks v. Delaware* challenge.[8] SER 111. As to the magistrate judge's explicit finding that Ditirro had not raised any Fifth or Sixth Amendment challenges regarding a right to counsel, however, Ditirro made no objection and made no attempt to raise such challenges to the district court. SER 98-123.

---

[8]    Ditirro has abandoned this argument on appeal. OB 14.

11

The government, for its part, did not appeal the magistrate judge's suppression of Officers Bianco and Wilson's statements to the district court. The district court conducted a *de novo* review, and adopted and affirmed the Report and Recommendation. 1ER 199.

### J. Trial

At trial, the government presented testimony from several witnesses, including Officers Bianco and Wilson. The trial testimony of the two officers focused on chain of custody for the impounded SD card. 2ER 322–345 (Testimony of Officer Bianco); 2ER 345–358 (Testimony of Officer Wilson). And the government played portions of Ditirro's statement relating to the type of phones he had used in the past, namely Samsung models S4 and S6. 2ER 367-372.

The government established interstate commerce nexus through two witnesses. First, through Forensic Examiner Trafford, the government showed that the SD card was manufactured in China. 3ER 416. Second, through the testimony of Michael Finnegan, senior director of the head of security and risk management for Samsung Electronics American, the government showed that all Samsung mobile phones are manufactured outside the United States. 2ER 379-380, 383.

12

The government also presented the testimony of five girls, R.B., T.H., C.A., S.M., and A.P.[9] 3ER 395-96. R.B. testified that Ditirro raped her and recorded it using his cell phone. 3ER 491-494. When R.B. was 14, she met Ditirro through a social media chat application called Meet Me. 3ER 486. R.B. began talking to Ditirro but eventually ended the conversation. 3ER 489. Ditirro found out where she lived and showed up at her house uninvited. 3ER 494. R.B. testified that Ditirro forcibly raped her on her back porch. 3ER 494. A video in the "R.B. 14" folder on Ditirro's SD card corroborated R.B.'s story, as the backyard porch furniture was still present at the home years later. The court and jurors saw videos of this rape that took R.B.'s virginity.

T.H. testified that Ditirro deceptively enticed her into having sex with him and that he recorded them having sex when she was just 13 years old. 3ER 508, 511, 513. In early 2013, when T.H. was 13, she met Ditirro on Meet Me. 3ER 505. Ditirro quickly initiated sexual conversations with T.H. and ultimately asked to trade nude photographs over Kik. 3ER 508-510. Throughout that month, Ditirro and T.H. met up every night and had sex. 3ER 511. On at least two occasions to T.H.'s knowledge, Ditirro recorded having sex with her. 3ER 512-513. Although T.H. was aware of the recording,

---

[9]     A full recounting of the trial testimony of each girl is contained in the government's sentencing memorandum. SER 1-26.

she can be seen in the videos covering her face and otherwise looking away from the camera. 3ER 513. The videos were recorded with Ditirro's phone. 3ER 508, 511, 513.

C.A. testified that Ditirro raped her and recorded it using his cell phone. 3ER 528-532. C.A. was 15 years old when Ditirro initiated contact with her via Meet Me. 3ER 523. He told her he was 18. 3ER 524. C.A. told Ditirro she was a minor. 3ER 524. One day, Ditirro showed up at C.A.'s home uninvited while she was alone. 3ER 528. Ditirro, who is more than a foot taller and close to 200 pounds heavier than C.A., carried her upstairs to her bedroom, shut the door, and raped C.A. 3ER 530. While doing so, Ditirro had his white cell phone in his hand, recording the sexual assault. 3ER 532.

S.M. testified that Ditirro deceptively enticed her into having sex with him and that he recorded them having sex unbeknownst to her. 3ER 541-542. S.M. met Ditirro when she was 15 years old on Meet Me. 3ER 537. His profile said he was 18 years old. 3ER 537. S.M. said Ditirro showed her a falsified birth certificate stating he was 18 years old. 3ER 538.

Ditirro traveled to Texas twice to have sex with S.M. 3ER 541-42. During the second trip, S.M. was 16 years old. 3ER 544. During the second of these trips, Ditirro began to forcibly rape S.M. and would not stop. 3ER 545. S.M. tried to kick her legs up to get Ditirro off her body, but Ditirro pushed her

14

down and S.M. hit her head on the headboard. 3ER 545-46. Unbeknownst to S.M., Ditirro recorded one of these rapes. 3ER 542-44.

A.P. identified herself as the nude 15-year-old girl depicted in Skype screenshots made by Ditirro. 3ER 557-563. A.P. further testified that she had seen the videos Ditirro created of him raping R.B. and C.A., and that Ditirro asked A.P. to persuade S.M. to lie to investigators if they asked her any questions about Ditirro. 3ER 557-565.

During its closing argument, the government explained that "the SD card itself" held a trade insignia of "Made in China," which proved "beyond a reasonable doubt" that the "SD card that was used to produce child pornography, crossed state lines." SER 65. The district judge instructed the jury that use of "items that had been moved in interstate commerce" satisfied the element. SER 55.

The jury returned a verdict of guilt on all counts. 1ER 201. Ditirro filed a timely notice of appeal. 1ER 213.

## IV.

## SUMMARY OF ARGUMENT

Lonny Ditirro sexually preyed on nearly fifty girls, and meticulously organized the child sexual abuse images he produced and collected of those victims on an SD card. He kept 48 folders titled with the names of girls and

15

ages ranging from 13-17 years of age. These folders included photos of the girls, videos of Ditirro having sex with or raping them, and letters and text messages about how some of the girls were in love with Ditirro. Ditirro's ex-girlfriend discovered that SD card and gave it to police, and detectives obtained a search warrant to document its contents. When Ditirro was arrested, he gave a post-*Miranda* statement. He now seeks to suppress both the contents of the SD card and his statement. None of his arguments have merit.

First, the district court properly admitted evidence at trial from the SD card. Even after excising the observations of the reporting patrol officers, ample probable cause in the affidavit supported the search warrant. Specifically, the statements from Ditirro's ex-girlfriend alone provided sufficient probable cause for the search warrant—Ismail told law enforcement *twice* that she had seen images on the SD card of an adult male forcibly raping a five-year-old child. In any event, the independent source, inevitable discovery, attenuated basis, and good-faith exceptions to the exclusionary rule all apply and weigh in favor of admissibility.

Second, the district court properly admitted Ditirro's post-*Miranda* statement at trial. Ditirro waived his Fifth and Sixth Amendment claims by choosing not to raise them in the district court even after the magistrate judge explicitly noted his failure to do so. His choice to forgo those claims prevented

16

the government from creating a record on the issue in the district court, and he fails to show good cause for raising them on appeal for the first time.

Regardless, the claims fail on the merits as well. Law enforcement read Ditirro his *Miranda* rights and he waived those rights. Ditirro had not previously invoked his right against self-incrimination or his right to counsel. And once Ditirro began asking questions about possibly having an attorney present, law enforcement stopped all substantive and incriminatory questioning.

Third, even if admission of Ditirro's statement was in error, that error was harmless. His statement was used only to corroborate other uncontroverted evidence of interstate commerce nexus. Therefore, any alleged error from the admission of the statement did not cause actual prejudice.

## V.

## ARGUMENT

### A.    The District Court Properly Admitted into Evidence the Contents of the SD Card.

#### 1.    Standard of Review

This Court reviews a district court's denial of a motion to suppress evidence *de novo*, and the factual findings underlying the denial for clear error. *United States v. Yang*, 958 F.3d 851, 858 (9th Cir. 2020). "Testimony at trial may be used to sustain the denial of a motion to suppress evidence, even if

17

such testimony was not given at the suppression hearing." *United States v. Sanford*, 673 F.2d 1070, 1072 (9th Cir. 1982); *see also Rocha v. United States*, 387 F.2d 1019, 1021 (9th Cir. 1967) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925) and *Rent v. United States*, 209 F.2d 893 (5th Cir. 1954)) ("In determining whether a district court erred in admitting evidence claimed to have been seized as the result of an unreasonable search, an appellate court will not ordinarily limit itself to the testimony received at a pretrial motion to suppress, but will also consider pertinent testimony given at the trial."); *United States v. Ardle*, 435 F.2d 861, 861 (9th Cir. 1970) (same).

The "failure to properly address and brief the objectionable issues waives the right to appeal." *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983). Thus, this Court will not review challenges to a magistrate judge's factual findings for the first time on appeal. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015).

## 2. Even After Excising Statements About What Officers Bianco and Wilson Saw, Probable Cause Supported the Search Warrant.

The Fourth Amendment requires that a search warrant be based on "probable cause, supported by Oath or affirmation[.]" U.S. Const. amend. IV. A law enforcement official seeking the warrant must establish probable cause to believe the evidence sought would assist in finding or convicting a particular

defendant for a particular offense. *Bill v. Brewer*, 799 F.3d 1295, 1300 (9th Cir. 2015) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). This probable cause analysis is "practical" and "nontechnical," and it routinely requires judges to draw "reasonable inferences." *Illinois v. Gates*, 462 U.S. 213, 231, 240 (1983) (citation and quotation marks omitted). The issuing judge need only find under "'the circumstances set forth in the affidavit before him . . . a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting *Gates*, 462 U.S. at 238); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (requiring only "cause to believe" the evidence sought "will aid in a particular apprehension or conviction"). In doing so, the judge must consider the "totality of the circumstances." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 246). Probable cause requires nothing more than a "'fair probability,' not certainty or even a preponderance of the evidence." *Id.* (quoting *Gates*, 462 U.S. at 246).

"The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant," *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987). Where a search warrant affidavit includes tainted evidence, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence

19

would provide a neutral magistrate with probable cause to issue a warrant." *Id.*
If the affidavit, minus the tainted evidence, would have provided probable
cause for a neutral magistrate to issue a warrant, then the evidence must not be
suppressed. *Id.*

Contrary to Ditirro's framing of this issue as involving consent or private
search issues,[10] the question is whether the search warrant was supported by
probable cause after excising the statements of Officers Bianco and Wilson. As
the district court correctly found, it was. After excising the officers' statements,
the magistrate judge found—and the district judge agreed—that "the testimony
that Torrez and Ismail provided to the Metro Officers established a fair
probability that a crime had been committed." 1ER 189. Torrez told officers
that Ismail reported seeing child pornography on the SD card. 1ER 218.

---

[10]    Ditirro's arguments regarding consent, standing, and exceeding the
scope of the private search are inconsequential to this Court's analysis. OB 10-
13. The Report and Recommendation determined that the government failed
to show that the responding officers' search was co-extensive with the search of
the private actors, and thus recommended suppression of any statements or
testimony from Officers Bianco and Wilson about "what they viewed while
searching the images contained in the SD card." 1ER 188. The government did
not appeal those determinations to the district court, and likewise did not
present any evidence at trial from Officers Bianco and Wilson about what they
viewed while searching the images contained in the SD card. 2ER 322–345
(Trial testimony of Officer Bianco); 2ER 345–358 (Trial testimony of Officer
Wilson). The trial testimony of the two officers focused on chain of custody for
the impounded SD card. *Id.*

Ismail's voluntary statement provided that, on the SD card, she "saw so much porn which included kiddi porn children in full penetration and oral with grown men. Children were 5-10 various ages." 1ER 187. Likewise, she told Officers Bianco and Wilson that she saw "an image of a child who appeared to be 5 years old engaged in sexual acts with an adult male." 1ER 218. These statements established a fair probability that a child sexual exploitation crime had been committed.

Ditirro's protestations about "how difficult it is to discern children from adults in a pornographic context," are nothing more than a waived and non-reviewable challenge, for the first time on appeal, to a magistrate judge's factual findings about Ismail's and Torrez's credibility. *Bastidas*, 791 F.3d at 1159. Even considered on the merits, the argument fails when considered against the record in this case. Ditirro relies on Detective Tooley's testimony that it can be difficult to discern between a child who is 14 years old and an adult who is 18 years old to argue the ambiguity of the age of the victim defeated probable cause. OB 14 (citing 1ER 62). But the images Ismail told officers she saw did not involve a 14-year-old child—Ismail *twice* recounted seeing images of an adult male forcibly raping a *five-year-old* child. 1ER 187, 218. There is no possibility that those images might be confused with a consenting adult sexual relationship, or even a 14-year-old child. At a

21

minimum, these statements presented a fair probability that the pornography Ismail viewed on Ditirro's SD card included depictions of actual minors engaged in sexually explicit conduct.

Further, the magistrate judge properly determined that "those images combined with Ismail's November 30, 2015 telephone interview with Detective Tooley further support that there was probable cause." 1ER 190. Ismail's direct statements to Detective Tooley during their phone interview about seeing images of "a female child around the age of 12 engaged in sexual intercourse with an adult male" on the SD card also provided the necessary probable cause for the search warrant. Although the search warrant contains a passing reference to what Officers Bianco and Wilson saw, that conclusory, non-specific, fleeting reference alone would not, and could not, have provided probable cause for a search warrant. 1ER 218 ("Officers, using [Torrez]'s cell phone viewed the SD card. Officers observed several images of females, who appeared to be under the age of 16, engaged in sexual acts.") Importantly, once the single reference to what Officers Bianco and Wilson saw is excised, the remaining, untainted evidence (*i.e.*, Ismail's detailed and lengthy statements about seeing images of children as young as 5 years old engaged in sexual acts with adults including penetrative and oral sex, and Ismail's subsequent statements about seeing a 12-year-old girl engaged in sex with a man) provides

22

ample probable cause for a neutral magistrate to issue a search warrant. *See id.*;

*Vasey*, 834 F.2d at 788. Ditirro's argument to the contrary fails.

> **a.** **Even considering the Fourth Amendment violation, exceptions to the fruit of the poisonous tree doctrine preclude exclusion.**

Evidence derived from a Fourth Amendment violation, *i.e.* "fruit of the

poisonous tree," is inadmissible, subject to a few exceptions. *United States v.*

*Gorman*, 859 F.3d 706, 716 (9th Cir.), order corrected, 870 F.3d 963 (9th Cir.

2017). The focus of each exception is whether the Fourth Amendment

violation "tends to significantly direct the investigation to the evidence in

question." *Id.* (quoting reference omitted).

More than 50 years ago, the Supreme Court set forth the basic standard

for analyzing "fruit of the poisonous tree" issues. *Wong Sun v. United States*, 371

U.S. 471, 488 (1963). Since then, the Court has recognized distinct exceptions

to the exclusionary rule: (1) the "independent source" exception; (2) the

"inevitable discovery" exception; and (3) the "attenuated basis" exception. *See*

*United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989). The

Supreme Court has also provided a good-faith exception. *United States v. Leon*,

469 U.S. 897, 922 (1984).

## 1. *Independent Source*

The "independent source" exception operates to admit evidence that is "actually found by legal means through sources unrelated to the illegal search." *Ramirez-Sandoval*, 872 F.2d at 1396 (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)). "Independent source evidence is not 'fruit of the poisonous tree' because its discovery through independent legal means does not result from the official's illegal conduct." *Ramirez-Sandoval*, 872 F.2d at 1396 (quotation marks in original).

Here, Ismail's statement to officers provided an independent source for probable cause unrelated to the Fourth Amendment violation. Ismail's voluntary statement and statement to officers about seeing children as young as five years old in "full penetration and oral with grown men" provided probable cause alone. 1ER 187, 218. Therefore, the search warrant evidence is admissible as coming from an independent source, and is not fruit of the poisonous tree because it did not result from any Fourth Amendment violation. *Ramirez-Sandoval*, 872 F.2d at 1396.

## 2. *Inevitable Discovery*

The inevitable discovery doctrine permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless

24

of any overreaching by the police . . . ." *Nix v. Williams*, 467 U.S. 431, 447 (1984). If, "by following routine procedures, the police would inevitably have uncovered the evidence," then the evidence must not be suppressed despite any constitutional violation. *Ramirez-Sandoval*, 872 F.2d at 1399. The Government must make this showing by a preponderance of the evidence. *Nix*, 467 U.S. at 444.

Here, Detective Tooley received the case and interviewed Ismail in the ordinary course of law enforcement procedure. 1ER 48-50, 52. Ismail's new statements to Detective Tooley directly about seeing images of "a female child around the age of 12 engaged in sexual intercourse with an adult male" on the SD card provided the necessary probable cause for the search warrant. 1ER 218; s*ee Underwood*, 725 F.3d at 1081. Notably, Detective Tooley *did not* follow up with Officers Bianco and Wilson, showing that what they saw on the SD card was not the basis for forming probable cause, and the evidence would have been obtained regardless of any overreach on the part of those officers. 1ER 50; *see Nix*, 467 U.S. at 447. By following routine procedures of interviewing the original complainant and seeking a search warrant, Detective Tooley and law enforcement would inevitably have uncovered the evidence. *Ramirez-Sandoval*, 872 F.2d at 1399. Therefore, the evidence is admissible under the inevitable discovery exception.

25

### 3. Attenuated Basis

Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (emphasis added). In determining attenuation, the Court considers three factors: (1) "the temporal proximity of the illegal conduct and the evidence in question," (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct." *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir.), *order corrected*, 870 F.3d 963 (9th Cir. 2017) (internal quotations omitted) (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)). This Court directly analyzed the "attenuated basis" exception and noted the doctrine was the Supreme Court's express rejection of a "but for" causation standard. *United States v. Smith*, 155 F.3d 1051, 1060 (9th Cir. 1998) ("The 'attenuated basis' exception is, at bottom, the manifestation of the courts' consistent rejection of a 'but for' causation standard in 'fruit of the poisonous tree' doctrine.")

Assuming *arguendo* that there was official misconduct, rather than an inadvertent Fourth Amendment violation, the almost three-month gap between Officers Bianco and Wilson looking at images on the SD card (September 10, 2015), 1ER 76-77, and Detective Tooley speaking to Ismail and

26

obtaining a search warrant (December 2, 2015), 1ER 65, significantly dissipated any taint. This temporal gap, coupled with the intervening interview with Ismail, and recognition that Officers Bianco and Wilson were just trying to corroborate the accounts and determine if Ismail and Torrez were reporting the serious crime of child sexual exploitation in "good faith," makes the inadvertent Fourth Amendment violation remote. 1ER 80; *Strieff*, 136 S. Ct. at 2061. Because all three factors weigh in favor of admissibility, the violation is attenuated and the exception applies.

### 4. Good Faith

The good-faith exception precludes the exclusion of evidence obtained by police if the police conducted the search in "objectively reasonable reliance" on a warrant later held invalid. *Leon*, 469 U.S. at 922. The good-faith exception applies where the issuing judge was *not* misled by the information in the affidavit, the judge did *not* wholly abandon her judicial role, and the affidavit was *not* so lacking in probable cause as to render belief in it entirely unreasonable. *United States v. Schesso*, 730 F.3d 1040, 1050 (9th Cir. 2013).

Although the exclusionary rule of the Fourth Amendment excludes unlawfully seized evidence in a criminal trial, the rule is only applicable "when deterrence benefits outweigh its substantial social costs." *Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998) (citation omitted). In that regard,

suppression is "always" a "last resort," and evidence should not be suppressed when there is no deterrence benefit. *Strieff*, 136 S. Ct. at 2061.

In this case, the good faith exception applies; Detective Tooley and Detective Miller acted in objectively reasonable reliance on the warrant. *See Leon*, 469 U.S. at 922. The issuing judge could not have been misled by Detective Tooley's faithful recitation of the facts of the investigation, and there is no evidence that the issuing judge abandoned her judicial role. 1ER 215-221. The affidavit was not lacking in probable cause: as Ditirro implicitly admits, the search warrant is supported by probable cause if it includes the statements of the officers. OB 8 ("Without the tainted material, no probable cause existed to grant a search warrant.").

Finally, there is no deterrence benefit to suppression in this case. There is no societal benefit to suppression where patrol officers inadvertently exceed the scope of a private search when trying to determine the veracity of a citizen caller reporting the very serious crime of child sexual exploitation before impounding a person's personal property. 1ER 80. In this case, that task was complicated by the fact that Ismail, who originally discovered the images, felt so threatened by the contents of the SD card and Ditirro that she was not present when officers first arrived. 1ER 24-26, 30. Moreover, suppression in this case would punish Detective Tooley's good detective work, abiding by

28

protocol to follow up with the original complainant, setting forth all the facts for the issuing judge, and seeking a search warrant. Because suppression would serve no deterrent effect in this case, that remedy is unwarranted. *Strieff*, 136 S. Ct. at 2061.

**B.    Ditirro Waived His Fifth and Sixth Amendment Claims By Failing to Raise Them in the District Court, and He Demonstrates No Good Cause For Raising Them For the First Time on Appeal. Even If He Did Not Waive These Claims, They Fail on the Merits As Well.**

### 1.    Standard of Review

"Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Waived rights are not reviewable. *Id.* With respect to arguments a party timely raises in the district court, this Court reviews the court's rulings on a motion to suppress *de novo*, and reviews the findings of facts made in ruling on that motion for clear error. *United States v. Evans*, 786 F.3d 779, 784 (9th Cir. 2015). But "[a] theory for suppression not advanced in district court cannot be raised for the first time on appeal" absent a showing of good cause. *United States v. Guerrero*, 921 F.3d 895, 897 (9th Cir. 2019) (citation, quotation, and alteration omitted).

2.    **After the Magistrate Judge Explicitly Noted That Ditirro Had Raised No Fifth or Sixth Amendment Challenge, Ditirro Still Did Not Raise Such a Claim in the District Court.**

On appeal, Ditirro abandons all theories of relief he pursued as grounds to suppress his statement before the district court and instead—for the first time on appeal—raises Fifth or Sixth amendment deprivation-of-counsel arguments. Ditirro waived these arguments because he was put on notice of the arguments by the Report and Recommendation, 1ER 195, and he chose not to pursue these theories of relief, thereby abandoning his known rights. *See Perez*, 116 F.3d at 845. Accordingly, he has waived his Fifth or Sixth amendment deprivation of counsel arguments, and they are not reviewable. *Id.*

There was no ambiguity in Ditirro's theories of relief. The theories pursued in the district court were set forth in his motion; were confirmed by the magistrate judge before the evidentiary hearing; and were repeated by his defense counsel in anticipation of the hearing. Moreover, his stated theories strictly cabined the government's questioning at the hearing, precluding the government from making a record about the differences between the state charges and evidence and the federal charges and evidence.

Ditirro's theories did not include Fifth or Sixth amendment deprivation of counsel arguments, and the Report and Recommendation put him on notice of that fact. Indeed, after the evidentiary hearing, Ditirro was appointed new

30

counsel, who raised a new *Franks v. Delaware* challenge but still did not raise the claims Ditirro now seeks to advance. SER 35 (Prosecutor notes "that [new defense counsel], when he came on this case, he requested of [the prosecutor] if he would be able to file that motion, notwithstanding the fact that the motions deadline had passed. But in the interest of giving the defendant a fair shot and having everything litigated before the district court before we ever went to trial, [new defense counsel] and [the prosecutor] had that conversation, he filed that motion. We fully briefed it. He filed an appeal of that [to the district judge].")

Not only did Ditirro deprive the district court of the opportunity to rule on the admissibility of his statement under his new theories, and prevent the government from making an evidentiary record on the issue, he raises this theory for the first time on appeal and does not even attempt to show good cause. Accordingly, this Court should not consider it. *Guerrero*, 921 F.3d at 897.

### 3.    Ditirro Cannot Demonstrate Error, and Certainly Makes No Showing of Plain Error Affecting Substantial Rights.

Even if Ditirro has not waived this argument, this Court should review it at most for plain error. *See United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) (court reviews unobjected-to evidentiary issues for plain error). "Under that test, before an appellate court can correct an error not raised at

31

trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* at 631 (citations, quotations and alterations omitted). "If all three conditions are met, appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 631-32 (citations, quotations, and alterations omitted). Ditirro cannot show plain error affecting substantial rights of which this Court should take notice.

He cannot meet the first or second prongs of plain error for four reasons. First, the Supreme Court has rejected his Sixth Amendment argument in *Montejo v. Louisiana*, 556 U.S. 778 (2009). Even assuming *arguendo* that the state and federal cases were predicated on the same facts[11] and that Ditirro was represented in his state case, no Sixth Amendment violation occurred because law enforcement read Ditirro the *Miranda* admonishment and Ditirro waived his right to counsel. *Montejo*, 556 U.S. at 786-87; 795 (explaining that the Fifth and Sixth Amendment rights are waived under the same *Miranda* admonishment procedure).

---

[11] As noted, the government tried to refute this point through evidence at the hearing, but Ditirro objected that such evidence was irrelevant to the issues that were the subject of the hearing. 1ER 110-111.

32

Second, no evidence in the record supports his Fifth Amendment argument because Ditirro had not invoked his Fifth Amendment rights prior to giving his Mirandized statement. *Edwards v. Arizona*, 451 U.S. 477, 478 (1981). In fact, this record contains no evidence at all regarding what happened in the state case. Had defense counsel allowed exploration of this issue, the record would show that state law enforcement had not attempted to interview Ditirro, and thus he had not invoked his *Miranda* rights prior to the interview at issue in his case. Thus, *Edwards* (which requires a prior invocation) has no application here.

Third, Ditirro's Fifth Amendment arguments fail because Ditirro never unambiguously invoked his right to counsel. Contrary to Ditirro's unsupported assertions that he "repeatedly ask[ed] to speak to his attorney," OB 15, the transcript shows that Ditirro never unambiguously invoked his right to counsel and law enforcement ended the interview when Ditirro began to prevaricate about whether he should call his attorney. 2ER 265–74. Because "[i]n the context of invoking the *Miranda* right to counsel" a suspect must ask for counsel "unambiguously," Ditirro's failure to ask for counsel at all causes his Fifth Amendment arguments to collapse. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *see also United States v. Garcia-Morales*, 942 F.3d 474, 476 (9th Cir. 2019) (explaining that "when a suspect invokes his Fifth Amendment right to

33

cut off police questioning on a specific topic, he must do so 'unambiguously.'").

Fourth, even if Ditirro's non-specific questions to law enforcement in which he used the word "lawyer" could be considered an invocation under the law, no Fifth Amendment violation occurred because law enforcement did not ask any incriminating questions of Ditirro thereafter. 2ER 226–274 (transcript of voluntary statement); 2ER 265 (first mention of lawyer); 2ER 265–274 (no further incriminating questions asked).

Having withheld his objections until appeal, Ditirro precluded the government of making a record to refute his claims, and deprived the court of the opportunity to make findings related to the claims. This Court should not countenance such a strategy and should deem Ditirro's claim waived.[12]

## C. In Any Event, Introduction of Portions of Ditirro's Statement at Trial Was Harmless.

### 1. Standard of Review

This Court reviews introduction of an illegally obtained confession at trial for harmless error. *Rodriguez v. McDonald*, 872 F.3d 908, 926 (9th Cir.

---

[12] To the extent Ditirro attempts to revive the arguments made in the district court in reply, he has waived those arguments as well by failing to include them in his opening brief. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (argument raised for first time in reply brief is waived).

2017). This Court will reverse only if the error caused "actual prejudice," *i.e.*, had a "substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala*, 576 U.S. 257, 268 (2015). This Court conducts the harmlessness analysis *de novo*, and determines whether the verdict was "substantially swayed by the error." *Sessoms v. Grounds*, 776 F.3d 615, 629 (9th Cir. 2015).

### 2.  Admission of Ditirro's Statements at Trial Was Harmless.

Ditirro's statement was far from a confession. The portions of his statement that were played for the jury centered on his use of his cell phone, which the government used only to corroborate other evidence of use of interstate commerce. But, the government did not need Ditirro's statement to prove its case. Rather, as the government argued in closing, "the SD card itself" held a trade insignia of "Made in China," which proved "beyond a reasonable doubt" that the "SD card that was used to produce child pornography, crossed state lines." SER 65. The district court instructed the jury, without objection, that use of "items that had been moved in interstate commerce" satisfied the element. SER 55. This coupled with the victims' testimony that Ditirro used a cell phone to record the rapes made his testimony merely corroborative. 3ER 493, 121, 140. Therefore, any minimal corroboration that Ditirro's statement may have provided could not have

caused actual prejudice because it could not have caused the jury to convict or substantially swayed the verdict given the other overwhelming evidence. *Davis*, 576 U.S. at 268.

## VI.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court affirm the judgment.

Dated this 21st day of September, 2020.

NICHOLAS A. TRUTANICH
United States Attorney

ELIZABETH O. WHITE
Appellate Chief

*/s/ Elham Roohani*
ELHAM ROOHANI
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Attorneys for the United States

# VII.

## STATEMENT OF RELATED CASES

The government is not aware of any other related cases.

Dated: September 21, 2020

*/s/ Elham Roohani*
ELHAM ROOHANI
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(c) AND CIRCUIT RULE 32-1

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points, and contains 7,896 words.

Dated: September 21, 2020

/s/ Elham Roohani
ELHAM ROOHANI
Assistant United States Attorney